IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY A. JOHNSON,

      Petitioner,                          No. 2:12-cv-0120 MCE CKD P

   vs.

L.S. McEWEN,

      Respondent.                     FINDINGS & RECOMMENDATIONS

_____/

      Petitioner, a state prisoner, proceeds pro se with a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. No. 1). At issue is a 2008 judgment of conviction entered against him in the Solano County Superior Court on one count of possession of a firearm by a felon and one count of possession of ammunition by a felon, for which he was sentenced to twenty-five years to life plus two years in state prison. In two separate grounds, petitioner claims that his conviction was obtained in violation of his Sixth Amendment right to confrontation as set forth in Crawford v. Washington, 541 U.S. 36 (2004).

FACTUAL AND PROCEDURAL BACKGROUND

      "Within moments of her husband discharging a firearm, while fleeing the scene in her car, Tina Tyler called 911 and reported her husband had shot at her. She provided a description of him, defendant Tony Alfonso Johnson ([petitioner]), the firearm used and the

1

location of the incident." People v. Johnson, 189 Cal.App.4th 1216, 1218-19 (1st Dist. 2010).

Based on the foregoing, a 2008 Information charged petitioner with assault with a semiautomatic firearm enhanced by personal use of a firearm (count 1), possession of a firearm by a felon (count 2); possession of ammunition by a felon (count 3), shooting at an occupied vehicle (count 4) and grossly negligent discharge of a firearm (count 5). (Ex. 1,[1] Clerk's Transcript ("CT") at 2-4.)

When Tyler failed to appear at trial, a recording of her 911 call was admitted into evidence over the defense's objection. Johnson, 189 Cal.App.4th at 1221. The California Court of Appeal, First Appellate District, summarized the evidence adduced at trial as follows:

> At 10:46 p.m. on January 5, 2008, City of Fairfield Police Department dispatcher Kristina Leslie received a 911 cell phone call, transferred by the California Highway Patrol (CHP), from Tyler.
>
> At trial, Tyler's 911 call was played for the jury. Although the transcript of the call was not admitted into evidence, it was provided to the jury when the audiotape was played. The transcript reveals the following: The CHP informed Leslie that Tyler was saying her husband just shot at her and she was in her vehicle. Tyler then stated, "Now I'm on (Fairfield) and (Tabor). I'm driving away from the premises. He just shot at me. [¶] ... [¶] My husband shot - I just been shot at." When asked to confirm her location, Tyler responded, "Yes now I'm driving now. I have to get away. I'm just driving down (Fairfield) right now. Oh, my God. Oh, my God he shot at me." When asked if she was in her car, Tyler said, "Yes I am. I got a witness. I got my little goddaughter in the car. [¶] ... [¶] I'm in a Ford gray Mustang." When asked where her husband was, Tyler said, "He's at home. He's probably leaving by now. [¶] ... [¶] His name is [petitioner]." Tyler gave Leslie [petitioner's] race, date of birth, and said the shooting occurred at 2200 Peachtree Drive. Tyler described the gun as "a little small black like a .22," and said "he had been telling me to come by and get my stuff. [¶] ... [¶] So I had came by to talk to him about it or whatever. He had his girlfriend there... and then he's like well I moved on with my life." Tyler told Leslie her name and said, "I think I"m going to have a heart attack." Leslie told her to go back to Fairfield and Tabor to meet with police officers. Tyler gave Leslie her cell phone number and said,

---

[1] Citations to exhibits refer to those lodged by respondent on June 18, 2012. See Notice of Lodging Document in Paper (Dkt. No. 19).

2

"I just can't breath[e]" and "Oh my God, he just shot at me." Tyler told Leslie that [petitioner]'s girlfriend was in the residence with him, said [petitioner] was wearing a blue shirt and glasses, and said she was "scared."

At about 10:45 p.m. on January 5, 2008, Georgia Servantes was in a house on Peach Tree Drive when she was awakened by what sounded like a gunshot followed immediately by a female's scream. Later that night she saw police officers focused on a house across the street.

City of Fairfield Police Officers Apley and Ponce received the dispatch regarding the incident at 2200 Peach Tree Drive. After obtaining a search warrant, Ponce searched that address, looking for a handgun. Ponce found a Jennings .22-caliber pistol in the pocket of a man's cream-colored jacket hanging in the master bedroom closet. Five live rounds were found in the gun's magazine and a sixth round was chambered. Ponce found indicia that [petitioner] resided at the Peach Tree Drive residence. A spent .22-caliber casing was found in the front yard of the residence. The prosecution's criminalist could not conclusively determine whether the casing was fired from the pistol seized from [petitioner]'s residence, and no fingerprints were found on the pistol.

Apley testified he made contact with Tyler at about 10:45 p.m., while Tyler was in her car. She was crying and "seemed hysterical." He then assisted Ponce in searching [petitioner]'s residence. Apley also contacted [petitioner], who was wearing a blue shirt and "had glasses on his shirt." On cross-examination, Apley said on the night of the incident, Tyler told him [petitioner] had shot at her. However, she clarified that she did not know if [petitioner] had shot at her, but she knew he fired a gun since she saw smoke coming from the barrel of the gun. Tyler did not say [petitioner] had shot at her vehicle.

On redirect examination of Apley, pursuant to Evidence Code section 356, the court permitted the prosecutor to elicit statements made by Tyler to Apley regarding the shooting. Apley then testified that sometime after initially contacting Tyler in her car, he talked to her again. She told Apley she had been in her vehicle, facing northbound on Peach Tree, and was beginning to make a U-turn. [Petitioner] came out of the house holding a small, black semiautomatic weapon in his right hand, and began walking toward her car. He held the gun so that it was facing left, in a somewhat downward position. Tyler yelled, "'Are you going to shoot me,'" placed her car in reverse and began to back away from him. As [petitioner] followed the vehicle, Tyler placed her car in to drive and drove southbound past him onto Pacific Avenue. She heard was sounded like a single gunshot; and, when she looked in her rearview mirror, she saw [petitioner] holding a gun at shoulder level and smoke emitting from the gun.

3

> On recross-examination, Apley said Tyler told him she saw [petitioner] come outside with the gun after she completed the U-turn. On further direct, Apley said Tyler told him that she heard the gunshot, then looked in her rearview mirror and saw [petitioner] pointing the gun in her direction.
>
> [Petitioner]<sup>FN1</sup> stipulated that he had previously been convicted of a felony.
>
>> FN1.   [Petitioner] was granted permission to represent himself at trial.  (Faretta v. California (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.)

Johnson, 189 Cal.App.4th at 1219-21.

A jury convicted petitioner on counts 2 and 3, acquitted him of counts 4 and 5, and deadlocked on count 1, resulting in dismissal of that charge. (CT at 84-86.) In a bifurcated trial, the court found for sentence enhancement purposes that he had incurred five prior "strikes" and served two prior prison terms. (CT at 86.) The court sentenced him to twenty-five years to life plus two years.

On November 5, 2010, the California Court of Appeal affirmed the judgment in a published opinion. (Ex. 7.) On February 16, 2011, the California Supreme Court denied a petition for review. (Ex. 8, 9.) Petitioner sought habeas corpus relief in the California Supreme Court, where relief was denied on December 21, 2011. (Ex. 11.)

DISCUSSION

I. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v.

5

Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). In addition, under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

If the state court's decision fails to meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, a court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85; see also Johnson v. Williams, No. 11-465, 2013 WL 610199 at *6-7 (S.Ct. 2013) (holding that when a state court rejects some claims on the merits but does not expressly address a federal claim, there is a presumption subject to rebuttal that the state court also adjudicated the

6

federal claim on the merits).  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784.

II. Petitioner's Grounds for Relief

Petitioner claims that the trial court's admission of Tyler's 911 call (ground one) and Tyler's statements to police (ground two) violated his constitutional right of confrontation. Respondent contends that ground one is without merit, and that ground two is procedurally barred, barred by the rule of Teague v. Lane, 489 U.S. 288 (1989), and without merit.  As to both grounds, respondent additionally contends that any constitutional error was harmless.

The Confrontation Clause of the Sixth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, requires that a criminal defendant be afforded the right to confront and cross examine witnesses against him.  See Pointer v. Texas, 380 U.S. 400, 403 (1965).  In Crawford v. Washington, the United States Supreme Court held that the Sixth Amendment is violated when testimonial hearsay evidence is admitted under circumstances where the criminal defendant had no opportunity to cross examine the declarant. 541 U.S. 36, 68 (2004).  While the Crawford court specifically left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" it gave examples: "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury,

or at a former trial; and to police interrogations." Id. Subsequently, the Supreme Court summarized:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 547 U.S. 813, 824 (2006).

A. 911 Call

The trial court admitted the recording of Tyler's 911 call pursuant to the spontaneous exception to the rule against hearsay set forth in Cal. Evid. Code § 1240.[2] Johnson, 189 Cal.App.4th at 1221. On appeal, the state appellate court affirmed the trial court's ruling, holding that admission of the 911 recording did not violate the rule of Crawford. The state court began by noting that the Supreme Court in Davis v. Washington held that statements made to a 911 operator[2] in that case were nontestimonial, and therefore not inadmissible under the Confrontation Clause, listing following reasons: (1) the speaker was "speaking about events *as they were actually happening*," (2) the speaker "was facing an ongoing emergency," (3) the questions and answers in the call "were necessary to be able to *resolve* the present emergency," and (4) the 911 call occurred "in an environment that was not tranquil or even... safe." Johnson, 189 Cal.App.4th at 1222 (alterations in original) (quoting Davis, 547 U.S. at 827). The state court went on to hold:

/////

---

[2] Section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

[2] The Davis court assumed, without deciding, that a 911 operator acts as an agent of law enforcement and accordingly, that questions and answers in the course of a 911 call qualify as a police interrogation. Davis, 547 U.S. at 23 n.2.

8

We reject a reading of Davis that would require that challenged statements be made while the actual assault is going ongoing in order to be nontestimonial. We recognize that, in Davis, [the speaker] recited the events in the present tense, and the court said she described the events as they were "actually happening." (Davis, supra, 547 U.S. at p. 827, 126 S.Ct. 2266, italics omitted.) But the facts recited in Davis do not establish that the assault was literally ongoing during the call. No sounds of violence or shouts of pain are reported. It is certainly not unreasonable that a victim of violence who reports it immediately after its occurrence might describe it in the present tense or be so frightened or injured that she scrambles the tense. Though Davis stated [the speaker] described events as they were happening, it went on to contrast that to describing past events, "hours" after they had occurred. (Ibid.) Accordingly, Davis supports a conclusion that statements made *immediately* after, and in response to, a violent assault should be treated as presumptively made during a contemporaneous emergency.[FN8]

> FN8. Fisher, What Happened – and What Is Happening – to the Confrontation Clause? (2007) 15 J.L. & Pol'y 587 provides support for this interpretation of Davis. The author draws on history to argue that Davis is best understood as a broad interpretation of the res gestae rule, treating as nontestimonial "not only statements describing events in progress, but also those made immediately after in direct consequence to such events...." (Id. at p. 608, 126 S.Ct. 2266, fn. omitted.)

Davis held that the 911 call was placed when [the speaker]'s "environment" was not "safe," and this was one factor that led the court to conclude her initial statements were nontestimonial. The importance of this factor is emphasized by Davis's determination that the emergency ended for purposes of the confrontation clause when, in the midst of the 911 call, Davis left, leaving [the speaker] alone in her home, apparently in a safe environment. Davis further held that statements given by Amy Hammon, while she and her husband were in separate rooms in their home were testimonial, at least in part because the husband was under the control of the police. Thus Davis strongly suggests that when the victim is questioned by the police and the assailant has departed or is detained by the police, the emergency, for purposes of the confrontation clause, is over.

However, we reject [petitioner]'s contention that we should treat Tyler's flight from the scene of the shooting as creating a similarly safe environment, rendering her statements testimonial.

In Davis, when Davis departed from [the speaker]'s home, it appeared that, for any number of reasons, he had abandoned his

9

> violent assault for that time. Whether his anger was spent, or [the speaker] had successfully barricaded herself in an inaccessible spot, or there was some other reason, the assailant left. A *victim's* flight from an attack, like the one here, provides no insight into the *attacker's* frame of mind; Tyler's efforts to escape do not imply that appellant was no longer angry or unable to pursue her. While Davis apparently concluded that immediately after Davis left, [the speaker] was in a safe place, it would be unreasonable to conclude that immediately after a victim flees, he or she is in an equally safe place. (See People v. Brenn (2007) 152 Cal.App.4th 166, 169, 176-77, 60 Cal.Rptr.3d 830 [statements made by a victim during a 911 call were made during an ongoing emergency and nontestimonial, though the victim had left the scene of the assault, a home he shared with the defendant, and made the call from next door].)
>
> The conclusion that Tyler's 911 call was nontestimonial is consistent with the rulings in [People v. ]Cage[, 40 Cal.4th 965 (2007)] and [People v. ]Romero[, 44 Cal.4th 386, 421 (2008)]. In Cage, the statements were made more than an hour after the assault, not immediately after, and were treated as testimonial. In Romero, though the time gap between the attack and the nontestimonial statements is unclear, it exceeded five minutes and was certainly longer than the gap between the shots fired and Tyler's call.
>
> Davis commented that "the initial interrogation conducted in connection with a 911 call[ ] is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." (Davis, supra, 547 U.S. at p. 827, 126 S.Ct. 2266.) "[A]ny reasonable listener would recognize that [the speaker] ... was facing an ongoing emergency. Although one *might* call 911 to provide a narrative report of a crime absent any imminent danger, [the speaker]'s call was plainly a call for help against a bona fide physical threat." (Ibid.) This same conclusion is inescapable here.

Johnson, 189 Cal.App.4th at 1225-26.

The state court's decision was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. Even though Tyler's 911 call occurred after the single gunshot was fired, reasonable jurists could find that the primary purpose of the call was to resolve an ongoing emergency, such that the statements came within the Supreme Court's definition of those that are nontestimonial. See Davis, 547 U.S. at 822 ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively

indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to a subsequent criminal prosecution.); c.f. Crawford, 541 U.S. at 53 (finding testimonial a statement made and recorded while the speaker was in police custody after having been given Miranda warnings as a possible suspect). In this regard, Tyler made the 911 call just after the gunshot was fired, while still fleeing the scene, during which the shooter's whereabouts were unknown. In addition, the questions asked and answers given appear to have been more relevant to resolving the emergency presented than to gathering a narrative for a potential subsequent criminal prosecution. "That is true even of the operator's effort to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon." Davis, 547 U.S. at 827 (citing Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty., 542 U.S. 177, 186 (2004)).

      Petitioner notes in his traverse (Dkt. No. 20 at 9-10) that Tyler had driven away from the scene of the shooting when she made the statements at issue, and the Supreme Court in Davis held that "after the operator gained the information needed to address the exigency of the moment, the emergency appears to have ended (when Davis [the perpetrator]) drove away from the premises)." Davis, 547 U.S. at 828. The state court rejected petitioner's contention that Tyler's flight from the scene, by itself, rendered her statements testimonial, holding that it would be unreasonable to conclude that immediately after a victim flees, he or she is in a safe place. Johnson, 189 Cal.App.4th at 1226. The state court reasoned that the victim's flight provides no insight into the attacker's frame of mind. Id. Although it would appear to be the frame of mind of the speaker and interrogator that would matter as much as or more than that of the attacker,[3] the state court's conclusion in this regard was nonetheless reasonable.

---

[3] See Michigan v. Bryant, 131 S.Ct. 1143 (2011), discussed *infra*.

11

In addition, respondent persuasively asserts (Dkt. No. 18-1 at 18) that <u>Davis</u> did not require the state court to hold that the emergency ended once the victim left a shooting scene in a car because this would not be an application of principles actually established in <u>Davis</u>. See <u>Moses v. Payne</u>, 555 F.3d 742, 753-54 (9th Cir. 2009) ("[W]e have noted that a state court must apply legal principles established by a Supreme Court decision when the case 'falls squarely within' those principles, but not in cases where there is a 'structural difference' between the prior precedent and the case at issue, or when the prior precedent requires 'tailoring or modification' to apply to the new situation."). Under <u>Davis</u>, the most relevant question is not whether the emergency has ended, but rather, whether the "circumstances *objectively* indicat[e] that the *primary purpose* of the interrogation is to enable police assistance to meet an ongoing emergency." <u>Davis</u>, 547 U.S. at 822 (emphasis added).

In <u>Michigan v. Bryant</u>, the Supreme Court held:

> The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation. As the context of this case brings into sharp relief, the existence and duration of the emergency depend on the type and scope of danger posed to the victim, the police, and the public.

131 S.Ct. 1143, 1162 (2011). In <u>Bryant</u>, an ongoing emergency was found to exist where police responded to the scene of a shooting in a public place shortly after it occurred and took a statement from a fatally wounded victim as to the identity of the shooter and the circumstances of the shooting, where the location and motive of the shooter were unknown. <u>Id.</u> at 1156. <u>Bryant</u> was decided after the relevant state court decision in this case, and does not, therefore, constitute clearly established law for AEDPA purposes. See <u>Stanley</u>, 633 F.3d at 859. Were the court to find AEDPA error and proceed to de novo review, however, <u>Bryant</u> would support a conclusion that the statements at issue in this case were indeed nontestimonial. See <u>Bryant</u>, 131 S.Ct. at 1166 (statements held nontestimonial where police solicited the information necessary to enable

them to meet an ongoing emergency by asking "what had happened, who had shot him, and where the shooting occurred" so they could "assess the situation, the threat to their own safety, and possible danger to the potential victim and to the public" (internal quotations omitted)); see also Frantz, 533 F.3d at 735 (holding that when § 2254(d)(1) error is found, the constitutional issue must then be decided de novo). For all these reasons, relief cannot issue with respect to petitioner's claim that admission of the 911 recording violated his right to confrontation under the Sixth Amendment.

### B. Statements to Police

On cross-examination, petitioner elicited from Officer Apley testimony that Tyler stated she did not know if petitioner had shot at her, but knew he had fired a gun and saw smoke coming out of the barrel of the gun. (Reporter's Transcript ("RT") at 248, 250.) On redirect examination, finding that petitioner had opened the door, the trial court admitted Apley's additional testimony as to what Tyler said offered to put her admitted statements into context.

Respondent contends that petitioner's claim that Apley's testimony on redirect examination violated the Confrontation Clause is procedurally defaulted. Petitioner did not present this particular claim of error in his opening brief to the state appellate court or in his petition for review to the California Supreme Court. (See Ex. 4 at (i); Ex. 8 at (i).) Rather, he first presented this single claim in a petition for writ of habeas corpus to the California Supreme Court. (Ex. 10 at 3.) A docket sheet lodged by respondent indicates that the California Supreme Court denied his petition as follows: "The petition for writ of habeas corpus is denied. (See In re Dixon (1953) 41 Cal.2d 756, 759.) Werdegar, J., was absent and did not participate." (Ex. 11.)

California's Dixon rule "bars California state courts from granting habeas relief to a prisoner who failed to pursue the claims raised in his habeas petition on direct appeal from his conviction, unless his claims fall within an exception to the rule." La Crosse v. Kernan, 244 F.3d 702, 705 n.11 (9th Cir. 2001) (quoting In re Dixon, 41 Cal.2d 756 (1953)).

/////

1  As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). In order for a state procedural rule to be found independent, the state law basis for the decision must not be interwoven with federal law. LaCrosse, 244 F.3d at 704. To be deemed adequate, the rule must be well established and consistently applied. Poland v. Stewart, 169 F.3d 575, 577 (9th Cir. 1999). An exception to the general rule exists if the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Once the state has pleaded the existence of an independent and adequate state procedural ground as an affirmative defense, as respondent has in this case, the burden shifts to petitioner to place the adequacy of that procedural rule in issue. Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003). In order to do so, petitioner must "assert[ ] specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." Bennett, 322 F.3d at 586; High v. Ignacio, 408 F.3d 585, 589 (9th Cir. 2005). Thereafter, the state retains the ultimate burden of proving adequacy of the asserted bar. Bennett, 322 F.3d at 585-86.

Here, petitioner fails to meet his burden of citing authority demonstrating inconsistent application of California's Dixon rule barring claims on habeas corpus that could have been, but were not, raised on direct appeal. Petitioner has not addressed respondent's assertion of procedural default in his traverse. (Dkt. No. 20.) Nor does he attempt to show that he should be excused from the default. See Murray v. Carrier, 477 U.S. 478, 485 (1986) ("[A] federal habeas petitioner who has failed to comply with a State's [procedural rule] must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his

defaulted constitutional claim." (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).

Petitioner further makes no attempt to show that a fundamental miscarriage of justice will result if the claim is not reviewed. His case does not appear to be one of those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." See McCleskey v. Zant, 499 U.S. 467, 494 (1991). Accordingly, this court should find that it is precluded from reviewing the merits of the procedurally defaulted claim that admission of Apley's redirect testimony violated petitioner's Sixth Amendment right to confrontation.[4] See Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992).

In the alternative, petitioner's second ground is Teague-barred. Where the issue has been properly raised, a federal court considering a petition for habeas corpus must conduct a threshold Teague analysis before considering the merits of a claim. Horn v. Banks, 536 U.S. 266, 272 (2002).

"With few exceptions, the *Teague* non-retroactivity doctrine prohibits courts from announcing or applying new rules of law in federal habeas proceedings." Hoffman v. Arave, 236 F.3d 523, 537 (9th Cir. 2001), cert. denied, 534 U.S. 944 (2001). A state conviction and sentence become final for Teague purposes when the availability of direct appeal to the state courts has

---

[4] Prior to 1998, the California Supreme Court necessarily addressed fundamental constitutional claims when applying the Dixon rule. Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (citing In re Robbins, 18 Cal.4th 770 (1998)). Thus, during that time, the denial of petitions with citation to Dixon were not independent of federal law. In Robbins, however, the California Supreme Court "adopted... a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted." Park, 202 F.3d at 1152 (citing Robbins, 18 Cal.4th at 811-12). Thus, cases finding that a state court's citation to Dixon prior to 1998 did not constitute independent and adequate state law ground barring federal review of a habeas petition (e.g., Lacross, 244 F.3d at 704-05) in no way indicate that citation to Dixon in petitioner's case was not an independent and adequate state law ground.

The Dixon rule has been found to be an independent and adequate procedural ground when, as in this case, it is applied subsequent to the California Supreme Court's 1998 Robbins decision. See Flores v. Roe, 228 Fed. Appx. 690, 691 (9th Cir.) (finding claim procedurally barred where respondent affirmatively raised the Dixon procedural bar and the pro se petitioner failed to carry his subsequent burden of placing the procedural bar defense at issue), cert. denied, 552 U.S. 953 (2007); see also Flanagan v. Cash, No. CV 12-03410, 2013 WL 663531, at *4-5 (C.D. Cal. Jan. 11, 2013).

15

been exhausted, and a petition for writ of certiorari has been denied or, if not filed, when the 90 day time limit for filing has elapsed. See 28 U.S.C. § 2102(c); Caspari v. Bohlen, 510 U.S. 383, 390 (1994). Petitioner's conviction became final on May 16, 2011.

In ruling that petitioner had opened the door to Apley's additional testimony, the trial court cited California Evidence Code Section 356 (RT at 251-53), which "permits admission of the remainder of an otherwise inadmissible conversation where a part of the conversation has already been admitted... if the remainder of the conversation... has some bearing upon, or connection with the admission or declaration in evidence." Carson v. Facilities Development Co., 36 Cal.3d 830, 850 (1984) (footnote and internal quotations marks omitted).

Respondent contends that, at the time petitioner's conviction became final, and still today, no precedent of the Ninth Circuit or the Supreme Court required the trial court to find the testimony at issue inadmissible under the Confrontation Clause, and rather, that a "circuit split" existed as to this issue. In this regard, respondent argues that federal circuit courts had held that "Crawford did not change the rule that a defendant can waive his right to confront witnesses by opening the door 'to the admission of evidence otherwise barred by the Confrontation Clause.'" United States v. Holmes, 620 F.3d 836, 843 (8th Cir. 2010) (quoting United States v. Lopez-Medina, 598 F.3d 716, 733 (10th Cir. 2010)). Respondent fails to recognize, however, that both of the cited cases also held that any such waiver of confrontation rights "must be 'clear and intentional.'" Holmes 620 F.3d at 844 (citing Lopez-Medina, 596 F.3d at 732); see also United States v. Cromer, 389 F.3d 662, 679 (6th Cir. 2004) (holding that a "foolish strategic decision... will not cause the defendant to forfeit his rights under the Confrontation Clause").

Petitioner, a non-attorney, represented himself at trial. Respondent does not assert or make any attempt to show that petitioner intended to forfeit his right to confrontation. To the contrary, he probably made a foolish and uninformed strategic decision. None of the cases cited by respondent supported a state court holding that petitioner unintentionally waived his right to confrontation based on a foolish and uninformed strategic decision. Accordingly, the

undersigned declines to adopt respondent's argument that this ground is Teague-barred based on a circuit split that has not been shown to exist.

Nevertheless, it is clear that AEDPA precludes relief since no Supreme Court precedent yielded the rule sought by petitioner. Although a Teague analysis properly considers both United States Supreme Court decisions and circuit precedent (see Leavitt v. Arave, 383 F.3d 809, 820 (9th cir. 2004)), for AEDPA purposes, only Supreme Court precedent is relevant:

> [W]ith one caveat, whatever would qualify as an old rule under our Teague jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under [AEDPA]. The one caveat, as the statutory language makes clear, is that [AEDPA] restricts the source of clearly established law to this Court's jurisprudence.

Williams v. Taylor, 529 U.S. 362, 412 (2000). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent (see Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied by state courts. See Williams, 529 U.S. at 412. The circuit holdings discussed do not come close to demonstrating that Supreme Court precedent required the state court to hold that Apley's re-direct testimony violated the Confrontation Clause. As petitioner's second ground is both procedurally barred and barred by application of the AEDPA, no relief is available.

CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus (Dkt. No. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections petitioner elects to file, he may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc).

Dated: March 13, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

[8]
john0120.157